## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| _____ ) | |
| Luxottica Group, S.p.A.,                       ) | |
| *Plaintiff*,     ) | Civil No. 16-5847 (RBK-KMW) |
| v.                         ) | **Opinion** |
|                            ) | |
| Shore Enuff, and Bags and Accessories,   ) | |
| *Defendants*.   ) | |
| _____ ) | |

**KUGLER**, United States District Court Judge

Before the Court in this trademark infringement and unfair competition action is plaintiff's motion for default judgment, pre-judgment interest, attorneys' fees and costs, and injunctive relief against defendants ["this motion"] (ECF Doc. 100) under Federal Rule of Civil Procedure ["Fed. R. Civ. P." or "Rule"] 55(b) (2). Defendants have neither challenged nor filed an opposition to the motion. For the reasons below, **the Court GRANTS** the motion for default judgment and injunctive relief and **DENIES** the requests for pre-judgment interest and attorneys' fees and costs, except as to the filing fee of this action.

An appropriate Order accompanies this Opinion.

### 1.0     Factual and Procedural Background

On 23 September 2016, plaintiff Luxottica filed a complaint against the following 15 named defendants and 10 unnamed ones: Shore Enuff; One Stop Souvenirs LLC d/b/a/ Deck2sea; Beach Apparel; Fashion Paradise LLC; Stop & Save d/b/a Moon Traders; Dolma & Girls LLC; Sunshine Fashion; Shore Styles; City of Souvenirs LLC; AC Gift Shop; Hot Stop LLC; Bags and Accessories; Shore Gifts; Sea Star Souvenir; One Stop; and Does 1-10.

Plaintiff's complaint alleges:

-on 10 August 2016, its investigators saw that defendants, at their stores on the boardwalk in Atlantic City, New Jersey, were selling certain products that bore the mark "Ray Ban". ECF Doc. 1: ¶32.

-its investigators purchased such products from each of the 15 named defendants. *Id.*

-Luxottica representatives reviewed samples of all such purchased products and determined them to be counterfeit ["the counterfeit products"]. *Id.* at ¶33.

-the marks on the counterfeit products appear confusingly similar to plaintiff's registered marks. *Id.* at ¶34.

-Defendants were never authorized to manufacture, sell, and/or offer for sale products bearing its trademarks. *Id.* at ¶35.

The complaint also alleges, on information and belief, that all defendants had gotten the counterfeit products from the same source as the same counterfeit products from each defendant appeared substantially similar in style and price; and, defendants' stores were geographically close to one another on the boardwalk. *Id.* at ¶34.

Since defendants' confusingly similar products bear plaintiff's registered Ray Ban® marks, the complaint asserted: trademark infringement under the Lanham Act at 15 U.S.C. 1117 (a), (b) and/or (c); false designation of origin and unfair competition; common law trademark infringement; and unfair competition under New Jersey statutory and common law at N.J. Stat. Ann. 56:4-1 and 4-2. *Id.* at ¶

Much of the procedural background here relates to plaintiff's obtaining orders of default for 13 of the defendants for their failure to answer.[1] On 13 June 2018, plaintiff voluntarily dismissed without prejudice the 13 defendants for whom it had obtained default: One Stop Souvenirs LLC d/b/a Deck2sea, Beach Apparel, Fashion Paradise LLC, Stop & Save d/b/a Moon Traders, Dolma & Girls LLC, Sunshine Fashion, Shore Styles, City of Souvenirs LLC, AC Gift Shop, Hot Stop LLC, Shore Gifts, Sea Star Souvenir, and One Stop. ECF Doc. 87.

The action continued as to Shore Enuff and Bags and Accessories, the named defendants here. As for these defendants, on 8 March 2018, plaintiff filed a motion to strike their answers and obtain entry of default. On 24 Sep 2018, Magistrate Judge Williams issued a report recommending a grant of the motion to strike and entry of default because of these defendants' repeated failure to attend court conferences or otherwise defend the case, in the face of plaintiff's evidence of its repeated notices to them. ECF Doc. 89.

---

[1] Answers were filed by Shore Enuff (ECF Doc. 18); One Stop Souvenirs LLC d/b/a Decks2Sear (ECF Doc. 16); Beach Apparel (ECF Doc. 15); Fashion Paradise LLC (ECF Doc.12); Shore Styles (ECF Doc. 21); Hot Stop LLC (ECF Doc. 13; Bags and Accessories (ECF Doc. 11); Shore Gifts (ECF Doc. 14); and One Stop (ECF Doc. 17).

On 5 Jan 2017 Plaintiff made a motion to strike all defendants' answers. ECF Doc. 55.

On 7 Apr 2017, Magistrate Judge Williams ordered (ECF Doc. 66) to strike the answers of the following defendants--Fashion Paradise LLC, Hot Stop LLC, and One Stop Souvenirs LLC-- reasoning that these defendants were limited liability companies, which must be represented by business counsel, but their answers had been filed by *pro se* representatives and therefore legally impermissible.

Magistrate Judge Williams denied striking the answers of Shore Enuff, Beach Apparel, Shore Styles, Bags and Accessories, Shore Gifts, and One Stop because plaintiff had insufficiently demonstrated their status as limited liability companies.

On 26 June 2017, Plaintiff filed another motion to strike, this time for all remaining answers. ECF Doc. 26.

On 10 August 2017, Magistrate Judge Williams ordered the striking of answers of defendants Beach Apparel, Shore Styles, Shore Gifts, and One Stop but denied striking those of defendants Shore Enuff and Bags and Accessories. ECF Doc. 68.

On 7 September 2017 and 22 September 2017, Plaintiff requested default of all defendants for their failure to answer, except for Shore Enuff and Bags and Accessories. ECF Docs. 69 and 71. On 12 September and 22 September 2017, the Court entered Default as to Beach Apparel, Fashion Paradise LLC, Shore Styles, Hot Stop LLC, Shore Gifts, and One Stop. ECF Docs.

On 24 October 2018, this Court in ECF Doc. 90 adopted Magistrate Judge Williams's report and recommendation; and, on 12 March 2019 entered default against Shore Enuff, and Bags and Accessories.  On 18 March 2019, plaintiff filed this motion for default judgment under Rule 55(b) against Shore Enuff and Bags and Accessories, each of whom did not respond.

In its request for default judgment, plaintiff seeks the following relief:

1. $750,000.00 in statutory damages under the Lanham Act 15 U.S.C. 1117 (c), the calculation of which is based on plaintiff's assertion of defendants' willful infringement (ECF Doc. 100: 12-13);
2. Pre-judgment interest on the requested $750,000 in statutory damages at the rate of 6% from the date of service of the complaint, 29 October 2016, to the date of filing this motion, 18 March 2019, which equals $106,645.85 (*Id*. at 14);
3. Adding 1. and 2. amounts to a currently ascertainable, total damages request of $856,645.85;
4. as yet un-totaled attorneys' fees and costs because this case is "exceptional" and involving culpable conduct on the part of the defendants (*Id*. at 13);
5. post-judgment interest computed daily from the date of entry of the default judgment to the date of payment, according to the weekly average 1-year constant maturity Treasury yield rate (*Id*. at 15); and
6. a permanent injunction (*Id*. at 15-16) to enjoin defendants from engaging in further infringement of the Ray Ban® marks and in unfair competition against plaintiff.

## 2.0    Legal Standard of Review

Fed. R. Civ. Proc. 55(b)(2) authorizes courts, upon plaintiff's motion, to enter a default judgment against a properly served defendant who fails to plead or otherwise timely defend against a claim for affirmative relief.  If a defendant is in default of prosecuting the case, the Court accepts as true all of plaintiff's well-pleaded factual allegations in the complaint. *Comdyne I, Inc. v Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).  The Court, however, does not accept plaintiff's legal conclusions as it's the Court that determines whether the pleaded facts set forth an actionable claim (*Doe v. Simone*, No. 12–5825, 2013 WL 3772532, at *2 (D.N.J. 17 July 2013)).  Nor does the Court accept plaintiff's allegations concerning damages.  *Id.* [*citing* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure §2688, at 58-59 (3d ed. 1998 and Supp. 2013).

The "decision to enter default judgment rests within the sound 'discretion of the district court' (*Chanel, Inc. v. Matos*, 133 F.Supp.3d 678, 683 (D.N.J. 2015) [*citing Hritz v. Woma Corp*., 732

F.2d 1178, 1180 (3d Cir. 1984).  The Third Circuit's repeatedly stated preference is that "cases be disposed of on the merits whenever practicable".  *Hritz*, 732 F.2d at 1181.

### 3.0    Default Judgment Discussion

### 3.1    Jurisdiction

This matter being an action for trademark infringement and unfair competition under the Lanham Act, 15 USC §1051 *et seq.*, the Court has subject matter jurisdiction under 15 U.S.C. §1121 and 28 U.S.C. §§1331 and 1338 (b) as well as supplemental jurisdiction over plaintiff's New Jersey state law claims for trademark infringement under N.J. Stat. Ann. 56:4-1 and 4-2 under 28 U.S.C. §1367(a).

As it is unclear where defendants are currently located, this Court reviews both its general and specific personal jurisdiction over defendants. ECF filings show that personal service of the complaint upon Shore Enuff and Bags and Accessories was executed on 29 October 2016 at addresses on the boardwalk in Atlantic City, New Jersey.[2]  Defendants timely served  their answers, also stating their boardwalk addresses. [3]

Under Rule 4, a defendant is subject to the general personal jurisdiction of a United States district court if the defendant is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located".  *Fed. R. Civ. Proc. 4(k)(1)(A)*.  Thus, a New Jersey federal district court exercises general personal jurisdiction over parties who are domiciled in New Jersey to the extent provided under New Jersey state law.  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) [citations omitted].  Since the complaint was personally served on defendants at a New Jersey business address and defendants in their answers identified themselves as domiciled in New Jersey, this Court may exercise general personal jurisdiction over them.  *See, e.g., Erwin v. Waller Capital Partners, LLC*, No. 10-3283, 2010 WL 4053553, at *3 (D.N.J. 14 October 2010).

However, years have passed since defendants filed their answers.  As subsequent documents notifying defendants of court meetings were mailed to defendants' last known boardwalk addresses, and as boardwalk addresses are typically not year-round domiciles but transient summer business locations, it occurs to the Court that these defendants no longer conduct business or are even domiciled in New Jersey.  As an example, in November 2017, a process server executed proof of service by mail to each defendant to the addresses in their answers in order to notify them of a court-scheduled telephone conference.  ECF Docs. 76 and 77.

---

[2] ECF Docs 37 and 47.
[3] Shore Enuff's answer, signed by Mr. Mohammad Saleem on 21 Nov 2016 (ECF Doc.  18), listed its address as 2605 Boardwalk, Atlantic City, New Jersey 08401.  Bags and Accessories' answered on 17 Nov 2016 (ECF Doc. 11), listed Mr. Naman as a *pro se* defendant, and gave two addresses:  2607A Boardwalk and 1311 Boardwalk, both in Atlantic City, New Jersey 08401.

Neither defendant participated in that conference or in any subsequent proceeding, notices of which were typically sent by first-class mail.

Even if defendants are no longer domiciled in New Jersey, the Court still exercises specific personal jurisdiction over them. The New Jersey long-arm statute "permits the exercise of personal jurisdiction to the fullest limits of due process" (*IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir. 1998) [*citing DeJames v. Magnificence Carrier, Inc.*, 654 F.2d 280, 284 (3d Cir. 1981)]) when the cause of action is related to or arises out of defendants' activities that took place in New Jersey. *Powerhouse Equipment & Engineering Co., Inc. v. Power Mechanical, Inc. et al.*, No. 18-10744, 2019 WL 3334758, at *2 (D.N.J. 25 Jul 2019) [*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984).

Since trademark infringement is considered an intentional tort, whenever that occurs in New Jersey, the Supreme Court's "effects" test (*Calder v. Jones*, 465 U.S. 783 (1984) is applied (*AT&T v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994)) and requires plaintiff to show the following:

1) Defendant committed an intentional tort;

2) Plaintiff felt the brunt of the harm in the forum; and

3) The defendant expressly aimed the tortious conduct at the forum,

such that for both points 2) and 3) the forum serves as the focal point of the tortious activity. *IMO Industries,* 155 F.3d at 265-266 [*discussing Calder*].

In this default judgment motion, the Court takes as true plaintiff's allegations that its investigators identified defendants' sold goods as Ray Ban® counterfeit goods. Such infringing conduct identified in August 2016 targeted the summer tourist trade in New Jersey; and plaintiff felt the greatest brunt of the infringing sales in New Jersey. Thus, all three prongs of the "effects" test have been pleaded here and must be accepted as true, and therefore establish this Court's specific, personal jurisdiction over defendants, regardless of where domiciled.

**3.2    Entry of Default**

The Court must ensure the entry of default was appropriate. Rule 55(a) directs the Clerk of the Court to enter a party's default when that party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Here, Magistrate Judge Williams recommended defendants' answers be stricken because defendants repeatedly and consistently failed to attend required conferences or to otherwise prosecute this case (ECF Doc. 89:12) and this Court adopted Magistrate Judge Williams' report and recommendations. ECF Doc. 90. Accordingly, the Clerk appropriately issued entry of default under Rule 55(a) on 24 October 2018.

### 3.3 Fitness of Defendants to be Subject to Default Judgment

The Court must also confirm that the defaulting parties are not infants, incompetent persons, or persons in military service exempted from default judgment. *Fed. R. Civ. Proc.* 55(b)(2). In this case, the process server attested to the fact that each defendant was not an infant (ECF Docs. 37 and 47); and defendants' answers demonstrate an understanding of the complaint and competence to respond appropriately to it. ECF Docs. 11 and 18. That the process server personally served defendants at their places of business in New Jersey attests that neither defendant was in military service at that time. The Court finds that each defendant is subject to default judgment under Rule 55(b)(2).

### 3.4 Properly Pleaded Causes of Action Against Defendants

To award a default judgment, the Court must determine whether the complaint states proper causes of action against defendants. In doing so, the Court accepts as true plaintiff's well-pleaded fact allegations and disregards its pleaded legal conclusions. *Directv, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. 14 March 2006) [*citing* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2688, at 58-59 (3ed. 1998)].

Federal trademark infringement and unfair competition are measured by the same standard, that is: a mark used in commerce is likely to cause confusion because of its similarity to a mark already registered before the U.S. Patent and Trademark Office ["USPTO"].[4] *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 202 (3d Cir. 1999). Since the standards for New Jersey state trademark infringement[5] and unfair competition[6] are substantially the same, courts typically consider federal and state infringement claims together in evaluating liability. *Axelrod v. Heyburn*, No. 09–5627, 2010 WL 1816245, at *3 (D.N.J. 3 May 2010); *Zinn v. Seruga*, No. 05–3572, 2009 WL 3128353, at *27–*28 (D.N.J. 28

---

[4] 35 U.S.C. §1114(1) of the Lanham Act sets forth the standard of trademark infringement. See emphasis below.

*Any person who shall, without the consent of the registrant—*

*(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use **is likely to cause confusion,** or to cause mistake, or to deceive; … shall be liable in a civil action by the registrant….*

And, 15 U.S.C. § 1125(a)(1) of the Lanham Act sets forth the same standard for unfair competition claims:

*Any person who, on or in connection with any goods or services, … uses in commerce any word, term, name, symbol, or device … or any false designation of origin … which—*

*(A) is **likely to cause confusion**, or to cause mistake, or to deceive as to … the origin, sponsorship, or approval of [his or her] goods, services, or commercial activities by another person … shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.*

[5] under *N.J.S.A. 56:3–13.16,*
[6] under *N.J.S.A. 56:4–2*

September 2009); *N.V.E., Inc. v. Day*, No. 07–4283, 2009 WL 2526744, at *2 (D.N.J. 18 August 2009). This Court follows this practice.

To prevail on its trademark infringement and unfair competition claims, the plaintiff must prove three elements: 1) its ownership of the Ray Ban® marks, which are 2) valid and legally protectable, and 3) defendants' use of those marks is likely to create confusion. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210–11 (3d Cir. 2000). To establish elements 1) and 2), a USPTO-issued trademark registration suffices. *E.A. Sween Co., Inc. v. Deli Exp. Of Tenafly, LLC*, 19 F. Supp. 3d 560, 568 (D. N.J. 2014). Here, plaintiff presented registration certificates of its Ray Ban® marks. Complaint, ECF Doc 1: ¶26. Further, the Court observes from USPTO records that the marks are unchallenged, the required renewal registrations have been duly paid, and the registered classes of the marks cover the products plaintiff alleges were sold by defendants. On their face, the marks appear valid; and thus, the first two elements are satisfied.

Element 3—the use of confusingly similar marks--is shown when ordinary consumers are likely to conclude the marks used in commerce by defendants and plaintiff's registered marks identify a common source, affiliation, connection or sponsorship. *A & H Sportswear, Inc.*, 237 F.3d at 216 [*quoting Fisons Horticulture v. Vigoro Indus.*, 30 F.3d 466, 477 (3d. Cir. 1994)]. Although the Third Circuit has set forth a 10-factor framework for courts to analyze confusingly similar marks,[7] when the mark owner and the alleged infringer sell similar goods or services, the court need rarely look beyond the marks themselves. *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d. Cir. 1983). That is, when the goods sold are similar to mark owner's goods, as is the case here, analysis narrows to observing the extent of similarity between the registered and allegedly infringing marks. *E.A. Sween Co., Inc.*, 19 F. Supp. 3d at 569.

Here, plaintiff has alleged that its investigators personally witnessed that defendants were selling competing goods in the classes for which Ray Ban® marks are registered and that plaintiff's agents determined defendants' goods to be counterfeit. ECF Doc 1: ¶33. Since defendants' goods were determined by plaintiff to bear similar-enough marks to create counterfeit goods, and since Ray Ban® marks are internationally recognized, this Court finds plaintiff has stated a proper cause of action for trademark infringement and unfair competition under the Lanham Act, N.J.S.A. 56:3–13.16, and N.J.S.A. 56:4–2.

---

[7] *A & H Sportswear, Inc.*, 237 F.3d at 212: "(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market."

### 3.5    *Emcasco* Factors

Finally, deciding whether to enter default judgment for plaintiff here requires consideration of the *Emcasco* factors:

1) whether defendants as the defaulting parties have a meritorious defense;

2) what prejudice plaintiff has suffered; and

3) defendants' culpability in bringing about default.  *See Doug Brady, Inc. v. New Jersey Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) [*citing Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)].

The Court finds specifically:

1) That neither the facts alleged in the complaint nor the lack of response from defendants raises a cognizable defense to plaintiff's trademark infringement and unfair competition claims (*See Surdi v. Prudential Ins. Co. of Am.*, No. 08-225, 2008 WL 4280081, at *2 (D.N.J. 8 September 2008) [*stating* "The facts as alleged in the Complaint provide no indication of a meritorious defense" and *citing Palmer v. Slaughter*, No. 99–899, 2000 WL 1010261, at *2 (D. Del. 13 July 2000)].

2) That defendants' failure to defend or participate in this action causes plaintiff to suffer a continuing and unresolvable prejudice without a default judgment (*Ramada Worldwide Inc. v. Courtney Hotels USA, Inc.*, No. 11–896, 2012 WL 924385, at *5 (D.N.J. 19 March 2012) ["If a default judgment is not entered, (plaintiff) will continue to be harmed because it will not be able to seek damages for its injuries due to defendant's continuing refusal to participate in this case."); and

3) That the Court may reasonably infer defendants' culpability from their repeated failure to appear or defend in this matter. *Lee v. A to Z Trading LLC*, No. 12-4624, 2014 WL 7339195 at *2 (D.N.J. 23 Dec 2014).

Having found that all three *Emcasco* factors favor a grant of default judgment, the Court hereby orders a default judgment against defendants and assesses below the amount of damages sought by plaintiff as well as plaintiff's request for permanent injunctive relief.

### 4.0    Remedies Discussion

### 4.1    Statutory Damages

The Court now turns to assessing an appropriate amount of damages.  In establishing a violation of its trademark, a plaintiff is entitled to recover damages measured by defendants' profits.  15 U.S.C. §1117(a).  Alternatively, if unable to calculate lost profits for such a violation, a plaintiff may choose to recover statutory damages of not less than $1000 or more than $200,000 per counterfeit mark. 15 U.S.C. §1117(c).  Thus, plaintiff cannot recover under both 15 U.S.C. §1117(a) and §1117(c).  If the court finds the use of the counterfeit mark willful, then the

maximum amount recoverable is extended to $2,000,000. §1117(c). Such willful conduct must have included an "aura of indifference to plaintiff's rights" or a "deliberate and unnecessary duplicating of a plaintiff's mark...calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured.' " *Platypus Wear, Inc. v. Bad Boy Club, Inc.*, No. 08-02662,2009 WL 2147843, at *6 (D.N.J. 15 July 2009) [*citing Chanel v. Gordashevsky*, 558 F. Supp.2d 532, 538 (D.N.J. 2008)[internal citations omitted].

Willfulness can be implied by sales of goods bearing a registered mark that is well-known and without license from the mark owner. That defendants sold goods bearing a mark visually identical to the Ray Ban® mark as shown in ECF Doc. 100-1:5 & 7 supports an inference of defendant's intentional use of the mark. *Louis Vuitton Malletier & Oakley Inc. v. Veit*, 211 F.Supp.2d 567, 581 (E.D. Pa.2002). *See* ECF Doc. 100-1:5 & 7 [Affidavit of Jessica Covington, Esq. displaying photographs of two styles of sunglasses alleged to have been purchased from defendants, bearing the Ray Ban® marks].

Given the absence of clear guidelines for setting a statutory damage award, courts have exercised their discretion to compensate the plaintiff while simultaneously seeking to deter and punish defendants. *Coach, Inc. v. Ocean Point Gifts*, No. 09-4215, 2010 WL 2521444, at *6 (D.N.J. 14 June 2010) [internal citations omitted]. The Court has found statutory damages should bear some relation to the actual damages suffered. *Nike, Inc. v Eastern Ports Custom Brokers, Inc.*, No. 2:11-4390, 2018 WL 3472628, at *13 (D.N.J. 19 July 2018). *See also, Coach, Inc. v. Ocean Point Gifts*, No. 09-4215, 2010 WL 2521444, at *6 (D.N.J. June 14, 2010) [internal quotations omitted] [*citing Gucci Am. v. Duty Free Apparel, Ltd.*, 315 F.Supp.2d 511, 520 (S.D.N.Y. 2004) ["To the extent possible, statutory damages 'should be woven out of the same bolt of cloth as actual damages.' "] *amended in part on other grounds by* 328 F.Supp.2d 439 (S.D.N.Y. 2004)]. And, in assessing a statutory damage award that relates to actual damages, this Court has settled upon two strongly-motivating factors: the point of sale of the infringing goods and the monetary value of the item counterfeited ["*Chanel* factors"]. *Chanel, Inc. v. Matos*, 133 F.Supp.3d 678, 688 (D.N.J. 2015) [*citing, e.g., Coach, Inc. v. Fashion Paradise, LLC*, No. 10-4888, 2012 WL 194092, at *7 (D.N.J. 20 Jan 2012) *and Coach, Inc. v. Ocean Point Gifts*, 2010 WL 2521444, at *6] [both cases involving internet distribution of counterfeit luxury goods].

In considering the *Chanel* factors, the Court looks to plaintiff's factual allegations. Regarding the point of sale factor, plaintiff alleges point of sale occurred in stores located on the Atlantic City boardwalk and was known to occur in August 2016. ECF Doc. 1: ¶¶32-34. Plaintiff also alleges that all defendants, even those terminated from the lawsuit, likely received goods from a single source. ECF Doc. 1: ¶34. It is not clear from this allegation whether plaintiff intended to imply all defendants, even those terminated, created a "single" point of sale for the counterfeit goods.

There are many scenarios possible by which all defendants, including the terminated ones, received and sold the same counterfeit "Ray Ban" products. One possible scenario is suggested by plaintiff's photographs of the counterfeit sunglasses in which the "Aviator"-style sunglasses (ECF Doc. 100-2:9) bears an inscription "Made in Italy" and the "Wayfarer"-style sunglasses (ECF Doc. 100-2-7) states "China".  Since the counterfeit sunglasses identify countries of origin and bear an identical mark to that registered,[8] there is an implication that the counterfeit goods may have been gray market goods, intended for sale outside the United States, but imported here to take advantage of a cheaper price point.

As for the *Chanel* factor relating to the monetary value of the item counterfeited, plaintiff affirmatively states in this motion it cannot calculate the monetary value of its lost profits because it does not know the kinds or number of products sold bearing the infringing marks. ECF Doc. 100:12. Plaintiff is silent as to the possible duration of infringement, the possible classes of counterfeit goods sold, the specific, registered marks that have been infringed, and whether infringement continued up to and after defendants were served at the end of October 2016.  Nor does plaintiff allege defendants sold counterfeit goods on the internet.  Plaintiff is also silent as to the price its agents paid for the infringing items and the actual cost of genuine Ray Ban® sunglasses.

In the absence of alleged facts that help resolve the *Chanel* factors, the Court notes plaintiff's allegations implicate summer trade at the Jersey shore in which most boardwalk stores sell seasonal items such as sunglasses for 100 days—from about the middle of May until the middle of September and then close for the winter.  The Court also notes, in the photographs of the counterfeit sunglasses (ECF Doc 100-2: 7 and 9), both styles bear the Ray Ban® mark exactly as depicted in trademark registration number 1093658 and finds from these photographs, the only confirming evidence of counterfeiting, that just one registration was infringed. Consequently, the Court's calculation of statutory damages below considers that each of the two named defendants here infringed the trademark registered as U.S. Reg. No.1093658.

In ascertaining statutory damages that bear some plausible relation to actual damages, the Court further notes that on the Ray Ban® U.S. website[9] the current price of each of the Wayfarer and Aviator style sunglasses is about $153.00. Considering the lost profits occurred in 2016, the Court uses an average price for a pair of these sunglasses to be $145.00 and estimates the counterfeit sunglasses sold on average for about $50.00[10].  This translates to about $95.00 in

---

[8] This Court observes at the Ray Ban U.S. website, found at:  *https://www.ray-ban.com/usa/sunglasses/view-all/plp* , and last visited on 17 August 2019, that the Ray Ban® marks on the Aviator-style sunglasses and Wayfarer-style sunglasses for sale there are identical to the marks on the counterfeit goods pictured in ECF Doc. 100-2:7 and 9).

[9] Found at:  *https://www.ray-ban.com/usa/sunglasses/view-all/plp* , last visited on 17 August 2019

[10] This price is based on the Court's research into the current price of  Ray Ban® sunglasses on EBAY at *https://www.ebay.com/sch/i.html?_nkw=ray%2oban&ssPageName=GSTL* , last visited on 17 August 2019.  $50.00 as the 2016 counterfeit price

lost profits on every counterfeit pair of sunglasses sold.  The Court calculates statutory damages **for each defendant** this way:

100 DAYS X 2 PAIRS OF SUNGLASSES SOLD PER DAY11 X $95 LOST PROFITS PER PAIR X 1 INFRINGED MARK = $19,000.
With two named defendants here, the Court calculates $38,000 in total statutory damages, an award of 38 times the statutory minimum for the single infringed mark.  The Court awards plaintiff a total of $38,000 in statutory damages.

### 4.2    Pre-Judgment Interest

Plaintiff also requests an award of pre-judgment interest pursuant to *15 U.S.C. § 1117(b),* which is inapplicable here because § 1117(b) applies only to treble damages and pre-judgment interest on an **award of actual damages and profits.**  Because of its election of statutory damages, plaintiff has forfeited its right to an award of prejudgment interest damages under § 1117(b).  *See Chanel, Inc. v. Matos*, 133 F.Supp.3d at 691, note 10 [*stating* "However, because Plaintiff elected statutory damages rather than an award of actual damages and profits, Plaintiff forfeited its right to request treble damages" and *noting* 15 U.S.C. § 1117(b) applies only to treble damages, which apply exclusively to an award of profits or actual damages].

Nonetheless, the Court may, in its discretion, award prejudgment interest under *28 U.S.C. 1961.  Id.* at note 11 [*citing* Am. Honda Motor Co., Inc. v. Two Wheel Corp., 918 F.2d 1060, 1064 (2d Cir.1990).  Nevertheless, such an award is ordinarily reserved for " 'exceptional' cases," and Plaintiff has not demonstrated that defendants' conduct in this litigation rises to that level. *Id.*  See the discussion below.  For that reason, the Court denies plaintiff's request for prejudgment interest.

### 4.3    Post-Judgment Interest

As for post-judgment interest, pursuant to *28 U.S.C. § 1961*, plaintiff is entitled to the amount of statutory damages multiplied by a rate equal to the weekly average one-year constant maturity Treasury Yield for the calendar week preceding the date judgment is entered, that is the rate used above, 1.72 %.

### 4.4    Attorneys' Fees and Costs

Plaintiff requests attorneys' fees and costs under the Lanham Act at *15 U.S.C. §1117(a)* in an amount to be determined in a bill of costs filed in the Court within fourteen days after

---

is on average at least $15.00 less than the average current EBAY price of $65.00 for Wayfarer or Aviator Ray Ban® sunglasses.  The Court used EBAY as a comparison tool as Ray Ban® sunglasses sold there may be gray goods.
[11] The Court estimated that at least one pair of Wayfarer and one pair of Aviator sunglasses were sold each day of the estimated infringing period.

entry of default judgment pursuant to Local Rule 54-2.1. Section 1117(a) permits an award of attorneys' fees and costs in "exceptional cases". As for the definition of "exceptional", the Third Circuit has imported into Lanham Act cases the Supreme Court's "exceptional" standard enunciated in a patent action, *Octane Fitness, LLC, v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 555. *See Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014) ["The losing party's blameworthiness may well play a role in a district court's analysis of the "exceptionality" of a case, but *Octane Fitness* has eliminated [that party's culpability as] the first step in our two-step test for awarding fees under § 35(a) of the Lanham Act."]. A case is now "exceptional" in this Circuit when "(a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.' " *Fair Wind Sailing*, 764 F.3d at 315. Whether the losing party's "litigation position or litigation tactics" are exceptional is evaluated on a case-by-case basis, considering the totality of the circumstances. *Id.*

Here, there is no evidence that plaintiff, when it determined the sunglasses purchased from defendants were infringing, immediately notified defendants of the infringement and requested a cease and desist action and no evidence that defendants were notified of their infringement, other than through personal service of the complaint. There is no evidence that defendants continued to infringe after having been served in late October 2016. There is no evidence of multiple sales channels of infringement, say, via the internet or through social media. By enumerating this list, the Court is by no means placing the burden on plaintiff to quantify defendants' infringement. As discussed earlier, defendants' behavior appears unmistakably willful and intended to infringe. Nonetheless, the Court weighs the lack of evidence regarding defendants' culpable or unreasonable behavior in litigating this case as part of the totality of the circumstances. Put simply, It does not equate wilfull infringement as exceptional behavior. S*ee J&J Snack Foods Corp. v. The Earthgrains Co.*, No. 00-6230, 2003 WL 21051711 at *3 (D.N.J. 2003) ["Whether the suit is, or is not, exceptional requires a factual determination by the district court because every suit that [an infringing party] loses is not "exceptional".]

Here, the singular behavior signaling defendants' culpability is that they did not participate in litigating this case even though they had timely submitted their answers, which nonetheless were stricken because of their subsequent lack of prosecution over years. This evidence is insufficient to indicate that "exceptional" circumstances intensified and exacerbated plaintiff's litigation efforts. Accordingly, the Court denies plaintiff's recovery of attorneys' fees while granting plaintiff's recovery of the filing fee for this action under 15 U.S.C. § 1117(a)(3). *See, e.g., Chanel, Inc. v. Matos*, 133 F.Supp.3d at 689 [awarding plaintiff's statutory damages and recovery of filing fees, but not attorneys' fees].

### 4.5 Permanent Injunction

Plaintiff seeks the equitable relief of a permanent injunction against defendants continuing to infringe on the Ray Ban® marks. In *15 U.S.C. §1116(a)*, the Lanham Act affords the grant of such equitable relief to inhibit continuing infringement. In order to justify an appropriate grant of a preliminary injunction under the Lanham Act, a plaintiff must make a four-pronged showing:

"(1) that it has suffered an irreparable injury;

(2) that the remedies available at law, such as monetary damages, are inadequate for that injury;

(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 391 (2006)

"[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that discretion must be exercised consistent with traditional principles of equity..." *Id.* at 394.

The Third Circuit has found, when trademark infringement establishes the likelihood of confusion as to the source of a sold, infringing good covered, then "the inescapable conclusion is that there was irreparable injury." *Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d. 800, 805 (3d Cir. 1998) [internal quotations omitted]. Given that the likelihood of confusion has been established here, it follows prong 1 has been met and plaintiff has suffered an irreparable injury. *Cosmetic Warriors Ltd. v. Nailush LLC*, 2017 WL5157390 at *8.

As for prong 2, since plaintiff has asserted it cannot know the actual amount of lost profits without the participation of the defendants, it necessarily follows that the legal remedy of monetary damages is unknowable and therefore unavailable. Moreover, being impossible to calculate, monetary damages cannot make plaintiff whole for the loss of goodwill in its trademark because of the likelihood of confusion caused by the counterfeit goods. Thus, the legal remedy of damages cannot adequately compensate plaintiff. *Louis Vuitton v. Mosseri*, No. 07-2620, 2009 WL 3633882, at *5 (D.N.J. 28 October 2009).

Balancing the parties' hardships tips the scales in favor of plaintiff because of defendants' possible unknown location and absence in this lawsuit. Plaintiff has no way of redressing defendants' possible (but unknown at this point) continued infringement activity without an injunction from this Court. *Id.*

Finally, there is strong public interest in preserving the integrity, potency, and vitality of the government-granted property right in a registered trademark. *See* Adam Mossoff, *Trademark as a Property* Right, George Mason Law & Economics Research Paper No. 17-15, last revised 30 Nov 2018, last found at SSRN: https://ssrn.com/abstract=2941763 on 19 August 2019

*explaining* the nature of this intellectual property is a use right, i.e., a legal entitlement right, that cannot be separated from a commercial enterprise's goodwill, which is larger than the trademark use right but which "situates" the right and thereby defines its value. Ultimately, this government-granted use right can create, support, and sustain the reputation of a commercial enterprise's products and presence in the market place, which in turn sustains the general market (*Id.* at 22), which ultimately motivates for strong preservation of a mark owner's rights in the courts.

      For these reasons, the Court grants plaintiff the relief it seeks by enjoining defendants from infringing and/or counterfeiting the Ray Ban® marks. *Gordashevsky*, 558 F.Supp.2d at 540 ["[B]ecause the Defendants illegal conduct does not serve a legitimate purpose and harms both Chanel and the public interest, the balance of equities weighs strongly in favor of granting injunctive relief"].

**5.0    CONCLUSION**

      For the reasons discussed herein, the Court grants plaintiff's motion for default judgment as well as its request for a permanent injunction against defendants' infringement of plaintiff's Ray Ban® marks and denies pre-judgment interest and attorneys' fees and costs, except for the filing fee of this action.

27 August 2019                              s/ Robert B. Kugler
                                            ROBERT B. KUGLER
                                            United States District Court Judge